[No. E041858. Fourth Dist., Div. Two. Nov. 20, 2007.]

ROBERT A. GARRETSON, Plaintiff and Respondent, v.
DEBORAH POST, Defendant and Appellant.

**COUNSEL**

John B. Barriage for Defendant and Appellant.

Robert A. Garretson, in pro. per., for Plaintiff and Respondent.

## OPINION

**GAUT, J.—**

### 1. Introduction

Plaintiff and respondent Robert A. Garretson (plaintiff) brought this action in connection with his purchase of two pieces of real property in Big Bear from defendant and appellant Deborah Post (defendant). When plaintiff defaulted on a $125,000 promissory note secured by a deed of trust on one of the two properties, defendant initiated nonjudicial foreclosure proceedings. After plaintiff paid the amount defendant demanded in order to avoid foreclosure, plaintiff brought the instant action, asserting seven causes of action, including a wrongful foreclosure cause of action.

In response, defendant filed a special motion to strike the wrongful foreclosure cause of action under Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP statute (strategic lawsuit against public participation). The trial court denied defendant's anti-SLAPP motion, concluding nonjudicial foreclosure does not involve constitutional rights or free speech. Rather, it concerns a commercial transaction which is not protected activity under the anti-SLAPP statute.

Defendant appeals the trial court's order denying her anti-SLAPP motion to strike. She contends nonjudicial foreclosure is an official proceeding under the anti-SLAPP statute (§ 425.16, subd. (e)(1), (2)), and thus the trial court should have granted defendant's anti-SLAPP motion.

We conclude that the trial court correctly found that the nonjudicial foreclosure proceedings, including the notice of foreclosure, were not constitutionally protected activity under the anti-SLAPP statute. Accordingly, the judgment is affirmed.

### 2. Factual and Procedural Background

In 2003, plaintiff and defendant entered into a series of agreements whereby plaintiff purchased two real property lots from defendant, one known as the Big Bear Lodge and the other referred to as the Talmadge lot. Plaintiff purchased outright the Big Bear Lodge, which included a motel with cabins, a swimming pool, and a freestanding coffee stand.

The Talmadge lot is an unimproved parcel of land which plaintiff purchased by executing a $125,000 promissory note in favor of defendant,

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

secured by a deed of trust on the Talmadge property. Plaintiff was required to pay defendant interest-only monthly installments, with the full principal balance and accrued interest due in May 2006.

When plaintiff took over operation of Big Bear Lodge in March 2003, plaintiff and defendant agreed that plaintiff would temporarily use defendant's existing credit card accounts to deposit funds from credit card sales by the lodge and coffee stand until plaintiff established his own accounts. Defendant was to refund to plaintiff each month all credit account deposits from these two businesses.

Shortly after the completion of the real property transaction, a dispute arose between plaintiff and defendant as to their obligations. Plaintiff claimed he was entitled to a setoff against his promissory note payments because defendant had failed to pay him the sums due him from the credit card accounts and had not properly accounted for all of the money due plaintiff on the accounts. Plaintiff also complained that defendant had breached her promise to make the swimming pool operational and licensed for public use. As a consequence, plaintiff had incurred substantial expenses in repairing the pool.

Defendant responded by letter that plaintiff's complaints were groundless. Defendant claimed she had already applied all of plaintiff's credit account proceeds as a setoff against plaintiff's outstanding monthly installments due on the Talmadge lot promissory note. Defendant further claimed plaintiff owed her an additional $3,411.65.

On September 6, 2005, defendant commenced nonjudicial foreclosure proceedings, through Summit Foreclosure Services Corporation (Summit), by giving plaintiff notice of default and election to sell the Talmadge lot under deed of trust.

On December 10, 2005, plaintiff tendered payment, under protest, of $13,606.94, the amount Summit had told plaintiff was required to stop foreclosure proceedings. Defendant rejected the payment as inadequate, insisting she had accelerated the note, and the full balance on the note, plus accrued interest, was due and payable in order to cure the default.

On December 15, 2005, Summit gave notice of commencement of trustee's sale proceedings, with a sale date of January 26, 2006. Plaintiff's attorney responded by sending Summit a letter advising Summit and defendant that defendant was required by law to accept plaintiff's tender of payment to cure the default and stop the foreclosure proceeds, and failure to do so would result in plaintiff's suing Summit and defendant.

Summit then provided plaintiff with a statement of the current amount required to cure the default, and plaintiff tendered payment of the sum, under protest. Upon receipt of the payment, Summit recorded a notice of rescission of declaration of default and demand for sale.

On March 15, 2006, plaintiff sued defendant for wrongful foreclosure, for breach of the agreements related to plaintiff's purchase of defendant's two properties, and to compel defendant to arbitrate the disputes related to the two properties.

Defendant filed an anti-SLAPP motion to strike plaintiff's sixth cause of action for wrongful foreclosure. The trial court denied defendant's motion to strike, concluding the wrongful foreclosure cause of action did not involve constitutionally protected activity. The court explained it was denying the motion "[b]ecause a wrongful foreclosure has nothing to do with the constitutional right and free speech. And the statute was not enacted to substitute for commercial transactions, which are subject to their own rules and malicious prosecution."

### 3.   Applicable Anti-SLAPP Law

Defendant argues that the trial court erred in denying her motion because filing a notice of nonjudicial foreclosure is a protected activity under the anti-SLAPP statute.

The anti-SLAPP statute provides that: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■   The statute further defines the phrase "any act of that person in furtherance of the person's right of petition or free speech" to include the following: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public

issue or an issue of public interest." (§ 425.16, subd. (e).) In this case, defendant claims (1) and (2) apply to her nonjudicial foreclosure activity, particularly the notice of foreclosure.

If the alleged protected activity occurs in the context of a public or official proceeding, as stated above in (1) or (2), there is no additional requirement that it be connected with an issue of public importance. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

■ Application of the anti-SLAPP statute involves a two-step process: first, a determination of whether the defendant has made the threshold showing that the plaintiff's cause of action is one arising from protected activity under section 425.16, subdivision (e). If the defendant fails to meet this threshold burden, the court must deny his anti-SLAPP motion. If the defendant meets his initial burden, then the plaintiff must demonstrate a probability of prevailing on the merits of his claim. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*); *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 675 [10 Cal.Rptr.3d 696] (*Blackburn*).)

The critical consideration in the anti-SLAPP context "is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 89, original italics.) "In analyzing whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).)" (*Blackburn, supra,* 116 Cal.App.4th at p. 676.)

When ruling on an anti-SLAPP motion, "[w]e independently review a trial court's ruling on a SLAPP motion under a de novo standard of review. [Citation.] Moreover, whether section 425.16 applies to a particular complaint, presents a legal question subject to the same de novo review standard on appeal. [Citation.]" (*Blackburn, supra,* 116 Cal.App.4th at p. 676.)

### 4. Nonjudicial Foreclosure

The key issue here is whether defendant's act of noticing a nonjudicial foreclosure sale of plaintiff's property constitutes protected activity under the anti-SLAPP statute.

■ A foreclosure sale is a method for recovering a debt or enforcing a right secured by a mortgage or deed of trust. (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1236 [44 Cal.Rptr.2d 352, 900 P.2d 601] (*Alliance Mortgage*).) A foreclosure may be either judicial or nonjudicial. "In

a judicial foreclosure, if the property is sold for less than the amount of the outstanding indebtedness, the creditor may seek a deficiency judgment, or the difference between the amount of the indebtedness and the fair market value of the property, as determined by a court, at the time of the sale. [Citation.] . . .

"In a nonjudicial foreclosure, also known as a 'trustee's sale,' the trustee exercises the power of sale given by the deed of trust. [Citation.] Nonjudicial foreclosure is less expensive and more quickly concluded than judicial foreclosure, since there is no oversight by a court, '[n]either appraisal nor judicial determination of fair value is required,' and the debtor has no postsale right of redemption. [Citation.] However, the creditor may not seek a deficiency judgment. . . ." (*Alliance Mortgage, supra*, 10 Cal.4th at p. 1236.)

A nonjudicial foreclosure is governed by statute. "Civil Code sections 2924 through 2924k provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust. . . . [¶] The statutory scheme can be briefly summarized as follows. Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale. [Citations.] The foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee. [Citations.] After the notice of default is recorded, the trustee must wait three calendar months before proceeding with the sale. [Citations.] After the 3-month period has elapsed, a notice of sale must be published, posted and mailed 20 days before the sale and recorded 14 days before the sale. [Citations.] . . . The property must be sold at public auction to the highest bidder. [Citations.]" (*Moeller v. Lien* (1994) 25 Cal.App.4th 822, 830 [30 Cal.Rptr.2d 777] (*Moeller*).)

Although a nonjudicial foreclosure, by its very nature, is a private transaction (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended June 26, 1996, p. 2;[2] Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended July 9, 1996, p. 3[3]), as opposed to a judicial proceeding, the end result is the same. "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender. [Citation.]" (*Moeller, supra*, 25 Cal.App.4th at p. 831.)

---

[2] <http://www.leginfo.ca.gov/pub/95-96/bill/sen/sb_1451-1500/sb_1488_cfa_960702_152308_asm_comm.html> (as of Nov. 20, 2007).

[3] <http://www.leginfo.ca.gov/pub/95-96/bill/sen/sb_1451-1500/sb_1488_cfa_960709_162214_sen_floor.html> (as of Nov. 20, 2007).

A. *Litigation Privilege and Anti-SLAPP Statute*

Defendant contends the anti-SLAPP statute applies because defendant's foreclosure activity constituted an exercise of her constitutional right to free speech and petitioning in the context of an official proceeding authorized by law. (§ 425.16, subd. (e)(1), (2).)

Civil Code section 2924, subdivision (d) provides that a creditor's nonjudicial foreclosure activity constitutes privileged communications under the litigation privilege (Civ. Code, § 47, subd. (b)). Defendant argues that, because there is congruence between the litigation privilege and the anti-SLAPP statute, her act of noticing the foreclosure sale is also protected under the anti-SLAPP statute. In other words, because nonjudicial foreclosure proceedings are privileged under Civil Code sections 47 and 2924, defendant claims nonjudicial foreclosure proceedings are "official proceedings" under the anti-SLAPP statute.

Although the interpretation of language in Civil Code section 47 has been used to interpret similar language in the anti-SLAPP statute (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1125–1126 [41 Cal.Rptr.3d 1] (*Brown*)), we reject the broad conclusion that conduct deemed communicative for purposes of Civil Code section 47 automatically qualifies as constitutionally protected speech under section 425.16.

Relying on *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1467, footnote 3 [37 Cal.Rptr.3d 133] (*Ruiz*), the court in *Brown, supra,* 137 Cal.App.4th 1118 concluded that clauses (1) and (2) of section 425.16, subdivision (e) are coextensive with the litigation privilege, and therefore " ' "[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16." ' " (*Brown, supra,* at pp. 1125–1126; see also *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830]; *Briggs, supra,* 19 Cal.4th at p. 1115.)

The court in *Ruiz* concluded that clauses (1) and (2) of section 425.16, subdivision (e) are coextensive with the litigation privilege, Civil Code section 47, subdivision (b), without providing any discussion or analysis. The court in *Ruiz* merely cited *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650 [49 Cal.Rptr.2d 620], which states, without elaboration, that "The first two categories [clauses (1) and (2) of section 425.16, subdivision (e)] parallel the description of privileged communications in Civil Code

section 47, subdivision (b) and include judicial proceedings without any limitation as to subject matter. [Fn. omitted.]"

Certainly this appears to be true. The language in section 425.16, subdivision (e)(1) and (2) parallels the description of privileged communications in Civil Code section 47, subdivision (b). The two statutes contain similar language. But this does not necessarily mean the two statutes are coextensive or congruent in scope as applied.

The court in *Briggs, supra,* 19 Cal.4th 1106, does not state that whenever the litigation privilege applies, the anti-SLAPP statute necessarily applies as well. This happened to be the case under the facts in *Briggs* but would not necessarily be so in other cases.

Civil Code section 47 provides in relevant part that "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ."

Civil Code section 2924, subdivision (d), relating to nonjudicial foreclosure, states: "All of the following shall constitute privileged communications pursuant to Section 47: [¶] (1) The mailing, publication, and delivery of notices as required by this section. [¶] (2) Performance of the procedures set forth in this article. [¶] (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure."

The Legislature's rationale for extending the litigation privilege in Civil Code section 2924 to nonjudicial foreclosures was to protect trustees in the performance of their contractual and statutory duties. The proponents of the original amendment to Civil Code section 2924 in 1996 commented that "Trustees who record and send notices of default and of sale can be vulnerable to defamation suits despite the fact that when the same allegations are made in the context of a judicial foreclosure, they are clearly privileged communications. This appears to be because *a nonjudicial foreclosure is a private, contractual proceeding, rather than an official, governmental proceeding or action.* Essentially, the required communications of default are the same and made for the same purpose." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended June 26, 1996, p. 2, italics added; see also Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended July 9, 1996, p. 3.)

Defendant claims that, because the notice of foreclosure was a privileged communication under Civil Code section 2924, subdivision (d), it was also protected activity under the anti-SLAPP statute. To prevail on this theory, defendant must show both that (1) the scope of the litigation privilege and section 425.16, subdivision (e)(1) and (2) is identical, and (2) the Legislature's designation of nonjudicial foreclosure as falling within the litigation privilege (Civ. Code, § 2924, subd. (d)) is determinative as to application of the anti-SLAPP statute as well.

As to the first requirement, the California Supreme Court in *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322–323 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*), stated that the scope of protection under the two statutes is not identical. Although the holding in *Flatley* that the anti-SLAPP statute did not apply rested largely on the illegal nature of the communicative acts (i.e., a letter and telephone calls extorting money from a well-known entertainer), the California Supreme Court in *Flatley* explained that the litigation privilege and the anti-SLAPP statute are substantively different statutes that serve different purposes. (*Id.* at pp. 322–325.) While the litigation privilege is a substantive rule of law that grants absolute immunity from tort liability for communicative acts made in the context of a judicial proceeding, the anti-SLAPP statute is a procedural device for screening out meritless claims brought to chill the valid exercise of a person's constitutional rights of free speech and petition. (*Id.* at p. 324, citing *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 737 [3 Cal.Rptr.3d 636, 74 P.3d 737]; see also § 425.16, subd. (a).)

The *Flatley* court further explained that, while the purpose of the litigation privilege is to guarantee access to the courts, the purpose of the anti-SLAPP statute is to protect the valid exercise of a person's constitutional rights of free speech and petition from the abuse of the judicial process. (*Flatley, supra,* 39 Cal.4th at p. 324.) Based on these differences, the court concluded that, "Civil Code section 47 does not operate as a limitation on the scope of the anti-SLAPP statute." (*Flatley, supra,* at p. 325.) The fact that Civil Code section 47 may apply does not necessarily mean the anti-SLAPP statute applies. (*Flatley, supra,* at p. 325.)

Despite the Legislature's clear purpose, defendant urges this court to rely on Civil Code sections 47 and 2924 in concluding her speech is protected under Code of Civil Procedure section 425.16, thereby bypassing the requirement defendant's challenged speech constitutes a valid exercise of her constitutional rights, as defined in section 425.16, subdivision (e). We reject this proposition because the scope of the litigation privilege and the anti-SLAPP statutes significantly differ. Defendant must thus affirmatively show that her conduct qualifies as constitutionally protected activity under section 425.16.

## B. *Arising from Protected Activity*

In determining whether defendant met her threshold burden of showing the wrongful foreclosure cause of action arose from activity protected under the anti-SLAPP statute, we must determine whether the cause of action is based on protected speech or petitioning activity. (*Navellier, supra,* 29 Cal.4th at p. 89.)

Plaintiff's wrongful foreclosure claim is based on defendant's giving notice of nonjudicial foreclosure against plaintiff's property, resulting in plaintiff's incurring expenses in stopping the foreclosure. Defendant argues her alleged activity qualifies as protected speech under subdivision (e)(1) and (2) of section 425.16. We are unaware of any published case law dispositive on the issue of whether a nonjudicial foreclosure proceeding qualifies as an official proceeding under the anti-SLAPP statute.

As discussed above, nonjudicial foreclosure does not involve legislative, executive, or judicial proceedings. Nonjudicial foreclosure proceedings are statutorily based. Plaintiff claims nonjudicial foreclosure is an official pro-ceeding authorized by law. But according to the proponents of the 1996 amendment to the nonjudicial foreclosure statute, Civil Code section 2924, "a nonjudicial foreclosure is a private, contractual proceeding, rather than an official, governmental proceeding or action." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended June 26, 1996, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business, Analysis of Sen. Bill No. 1488 (1995–1996 Reg. Sess.) as amended July 9, 1996, p. 3.)

Plaintiff's wrongful foreclosure claim does not concern an issue under official review that required a determination to be based upon the exercise of defendant's free speech or petition rights. Rather, defendant and plaintiff engaged in business dealings or transactions of a contractual nature, leading to defendant initiating private nonjudicial foreclosure proceedings, which plaintiff claims were unjustified. (*Blackburn, supra,* 116 Cal.App.4th at pp. 676–677.)

We recognize that "official proceeding authorized by law" within the meaning of section 425.16, subdivision (e)(2) is not limited to proceedings before governmental entities. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 203 [46 Cal.Rptr.3d 41, 138 P.3d 193] (*Kibler*).) In *Kibler,* the court held a medical peer review hearing qualified as an official proceeding with the meaning of section 425.16, subdivision (e)(2). (*Kibler, supra,* at p. 203.)

The court in *Kibler* concluded a medical peer review hearing is an official proceeding because "the Business and Professions Code sets out a comprehensive scheme that incorporates the peer review process into the overall process for the licensure of California physicians." (*Kibler, supra,* 39 Cal.4th at p. 199.) Medical peer review, which is mandated under Business and Professions Code section 805 et seq., aids the appropriate state licensing boards in regulating and disciplining physicians and may lead to restrictions on the disciplined physician's license to practice or to the loss of that license. (*Kibler, supra,* at p. 200.) Peer review proceedings have an impact on state licensing and regulation of physicians.

The *Kibler* court further reasoned that a medical peer review hearing constituted an official proceeding because "A hospital's decisions resulting from peer review proceedings are subject to judicial review by administrative mandate. (Bus. & Prof. Code, § 809.8.) Thus, the Legislature has accorded a hospital's peer review decisions a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative mandate. [Citations.] As such, hospital peer review proceedings constitute official proceedings authorized by law within the meaning of section 425.16, subdivision (e)(2)." (*Kibler, supra,* 39 Cal.4th at p. 200.) In addition, the *Kibler* court noted that to hold otherwise would discourage participation in medical peer reviews by allowing disciplined physicians to sue hospitals and their peer review committee members rather than seeking administrative relief.

The instant case is distinguishable from *Kibler* in that nonjudicial foreclosure proceedings, including notice of a foreclosure sale, are not closely linked to any governmental, administrative, or judicial proceedings or regulation, such as the state licensing and regulation of physicians in *Kibler*. Nonjudicial foreclosure merely provides a nonjudicial, private alternative to judicial foreclosure.

Even assuming defendant's notice of nonjudicial foreclosure constitutes an official proceeding authorized by law under section 425.16, subdivision (e)(1) or (2), this is not enough for defendant to prevail on an anti-SLAPP motion. The action must also arise from that protected activity. (*Navellier, supra,* 29 Cal.4th at p. 89.) Unlike in the instant case, in *Kibler,* it was undisputed that the conduct in question was an exercise of the defendants' free speech or petition rights. The plaintiff's lawsuit arose out of a disciplinary recommendation by the hospital's peer review committee. (*Kibler, supra,* 39 Cal.4th at p. 196.)

In *Navellier, supra,* 29 Cal.4th at page 89, the court explained that "In the anti-SLAPP context, the critical consideration is whether the cause of action

is *based on* the defendant's protected free speech or petitioning activity. [Citations.] [¶] In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)"

██ The *Navellier* court further noted: "The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit—to interfere with and burden the defendant's exercise of his or her rights." ' [Citation.] 'Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights' [citation]." (*Navellier, supra,* 29 Cal.4th at pp. 92–93.)

Upon considering the pleadings and other related documents, we conclude plaintiff's wrongful foreclosure cause of action does not arise from protected free speech or petitioning activity. Plaintiff's wrongful foreclosure cause of action contains the following allegations: "On December 10, 2005, Plaintiff tendered under protest the amount requested to cure all alleged defaults under the Deed of Trust even though Plaintiff was not in default under the Deed of Trust as all amounts due Defendants were set-off by amounts due Plaintiff resulting from Defendants' breach of contract as set forth above. [¶] . . . Notwithstanding, defendants Post and Summit gave notice that the sale of the Property would take place on January 26, 2006, at 10:00 a.m., at 16925 Main Street, Suite E, Hesperia, San Bernardino County, California. [¶] . . . As a result of Defendants' wrongful notice of foreclosure on the Property, Plaintiff suffered damages in an amount to be proven at trial."

While defendant argues plaintiff's claim is founded on a protected communication, the notice of foreclosure, it is apparent that plaintiff's wrongful foreclosure cause of action is not based on the notice itself, but rather on defendant's attempt to foreclose on plaintiff's property. "[T]hat a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier, supra,* 29 Cal.4th at p. 87.)

The gravamen of plaintiff's complaint was not actually the notice but the initiation of allegedly inappropriate nonjudicial foreclosure proceedings. The notice of foreclosure merely alerted plaintiff to an impending foreclosure sale

of plaintiff's property. Defendant's initiation of foreclosure proceedings, rather than the foreclosure notice itself, was what allegedly caused plaintiff to incur damages.

Similarly, in *Blackburn, supra*, 116 Cal.App.4th at pages 676–677, in which the defendant argued his fraud cause of action was subject to the anti-SLAPP law, the court held that the cause of action involved "a purely business type event or transaction" which did not arise from protected activity under the anti-SLAPP statute. (*Id.* at p. 677.) The gravamen of the plaintiff's fraud cause of action was the defendant's bidding up the price of real property without the intent to perform, resulting in the plaintiff's paying a higher price for the property at a sheriff's auction. (*Id.* at p. 676.)

The *Blackburn* court explained that "Brady [the defendant] fails to appreciate that the fraud cause of action does not arise from an act of free speech or right of petition for the redress of a grievance, but rather only from his actions which affected the bidding at a court ordered sale, which in essence is an event where offers to buy property are received according to certain requirements. Plainly, even construing the gravamen of Blackburn's third cause of action, as Brady does, as fraud committed in his bidding at the sheriff's auction, it is a purely business type event or transaction and is not the type of protected activity contemplated under section 425.16, subdivision (e)." (*Blackburn, supra*, 116 Cal.App.4th at pp. 676–677.)

The *Blackburn* court further explained that "[t]he ministerial event of a sheriff's sale or auction simply does not concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law. Rather, as already noted, it consists merely of offers and the acceptance of the highest bid made according to certain requirements without any determination based on the exercise of one's free speech or petition rights. As such, it concerns a business dealing or transaction somewhat analogous to the unprotected activity of bidding on public contracts . . . and not the exercise of protected activity under section 425.16." (*Blackburn, supra*, 116 Cal.App.4th at p. 677.)

Likewise, in the instant case, defendant's act of noticing a nonjudicial foreclosure is analogous to a business dealing or transaction. The foreclosure notice was only incidental or collateral to the principal purposes of private nonjudicial foreclosure proceedings. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 794, 809–811 [63 Cal.Rptr.3d 575].)

■ In addition to not arising from protected speech, plaintiff's wrongful foreclosure cause also is not based on petitioning activity within the meaning of the anti-SLAPP statute. The right to petition is a particular constitutional

right that generally involves pursuing a remedy afforded by a branch of government. It includes filing a lawsuit, seeking administrative action, and lobbying or testifying before a legislative or executive body. (See *Briggs, supra*, 19 Cal.4th at p. 1115 [statements made in connection with seeking administrative action, civil litigation, and a Department of Housing and Urban Development investigation]; see also *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 822 [33 Cal.Rptr.2d 446], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685] [litigation-related claims]; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 468–469, 474 [39 Cal.Rptr.3d 43] [lien claims before the Workers' Compensation Appeals Board]; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 101, 103–104 [15 Cal.Rptr.3d 215] [claims to various regulatory and law enforcement agencies]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 [113 Cal.Rptr.2d 625] [complaint filed with the Securities and Exchange Commission and posted on the Internet]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman, supra*, 47 Cal.App.4th at p. 784 [complaint to Attorney General requesting investigation].)

As stated above, it is not enough to show that the act occurred in connection with an official proceeding authorized by law. Defendant also must show that the cause of action arose from protected speech or petitioning the government for redress of a grievance. Although the anti-SLAPP statute must be construed broadly, the Legislature did not intend to apply the statute to purely private transactions. (See *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 932 [116 Cal.Rptr.2d 187] [submitting bids to city to obtain construction contract]; *People ex rel. 20th Century Ins. Co. v. Building Permit Consultants, Inc.* (2000) 86 Cal.App.4th 280, 285 [103 Cal.Rptr.2d 71] [submitting fraudulent claims]; *Ericsson GE Mobile Communications, Inc. v. C.S.I. Telecommunications Engineers* (1996) 49 Cal.App.4th 1591, 1601–1602 [57 Cal.Rptr.2d 491] [performing contractual obligations], disapproved on another ground in *Briggs, supra*, 19 Cal.4th at p. 1123, fn. 10; *Blackburn, supra*, 116 Cal.App.4th at p. 677 [bids submitted in a sheriff's auction]; *Brown, supra*, 137 Cal.App.4th at p. 1129 [stop notices and other collection efforts].)

■ In this case, defendant has failed to establish that she was engaged in constitutionally protected speech or petitioning activity. Her lawsuit arose from a purely private transaction—i.e., initiating nonjudicial foreclosure. The trial court thus properly found that defendant failed to make the threshold showing that plaintiff's lawsuit arose from constitutionally protected activity.

Accordingly, we conclude defendant has failed to make the necessary prima facie showing that her activity came within the protection of the

anti-SLAPP statute. Having so concluded, it is unnecessary to determine whether plaintiff established the probable validity of his wrongful foreclosure claim.

## 5. Disposition

The order is affirmed. Plaintiff is awarded his costs on appeal. This court defers to the trial court the factual determination of whether plaintiff is entitled to attorney's fees under section 425.16, subdivision (c), as the prevailing party on the anti-SLAPP motion.

Hollenhorst, Acting P. J., and Richli, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 27, 2008, S159515. George, C. J., and Corrigan, J., did not participate therein.