Filed 2/11/15  Electronic Waveform Lab v. EK Health Services CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ELECTRONIC WAVEFORM LAB, INC.,<br><br>    Plaintiff, Respondent and<br>    Cross-Appellant,<br><br>    v.<br><br>EK HEALTH SERVICES, INC., et al.,<br><br>    Defendants and Appellants;<br><br>STATE COMPENSATION INSURANCE FUND,<br><br>    Defendant and Cross-Respondent. | B249840<br><br>(Los Angeles County<br>Super. Ct. No. BC467496) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed and remanded.

LeClairRyan LLC, James C. Potepan, Brian C. Vanderhoof and Angeli C. Aragon for Defendants and Appellants.

Roxborough, Pomerance, Nye & Adreani LLP, Nicholas P. Roxborough, David A. Carman and Joseph C. Gjonola for Plaintiff, Respondent and Cross-Appellant.

Sheppard, Mullin, Richter & Hampton LLP, Frank Falzetta, Scott Sveslosky and Moe Keshavarzi for Defendant and Cross-Respondent.

_____

# I. INTRODUCTION

Legislation enacted in the last decade has made significant changes in the process by which disputes over medical treatment plans for injured workers covered by California's workers' compensation statutes are resolved. This process, commonly referred to as utilization review (UR), now requires that all decisions on such claims be made by physicians with prescribed training who follow procedures established by statute.

This case addresses whether UR is an "official proceeding" within the meaning of Code of Civil Procedure section 425.16, subdivision (e)(2) (the anti-SLAPP statute [SLAPP is the abbreviation for strategic lawsuit against public participation])[1] and whether the trial court correctly resolved the motion to dismiss under that statute filed by defendant State Compensation Insurance Fund (State Fund). That motion alleged that two causes of action in the first amended complaint filed by plaintiff Electronic Waveform Lab, Inc. (Waveform), arise out of official proceedings and constitutionally protected activity of State Fund.

We conclude that these allegations do not "arise from" official proceedings within the meaning of that term in section 425.16, subdivision (e)(2) and therefore are not protected activities. As this determination is dispositive of the issues raised on this appeal, we reverse and return the matter to the trial court for further proceedings. We also dismiss as improper the appeal of EK Health Services, Inc. (EK Health) and the physician defendants.

# II. FACTUAL AND PROCEDURAL HISTORY

Waveform manufactures and sells an electrotherapy device, commonly known as an H-Wave device, which physicians may prescribe to assist in treating various muscular injuries. Defendant State Fund is described in Waveform's first amended complaint as

---

[1]     Unspecified statutory references are to the Code of Civil Procedure.

2

"a quasi-state agency engaged in a proprietary function, namely the business of insurance. . . . It is the largest California workers['] compensation insurance carrier in the state, as measured by its market share and has been so since at least 2003 or before." State Fund contracts with EK Health and "independent contractor individual physician reviewers" (Reviewers) to provide UR services to workers covered by their employers' workers' compensation policies issued by State Fund.

UR is the process by which independent medical professionals review and approve, modify, delay or deny treatment prescriptions for injured workers. (Lab. Code, § 4610, subds. (a) and (g)(1).) Labor Code section 4610, subdivision (b) requires that every employer "establish a utilization review process in compliance with this section" to act on treatment recommendations by physicians who have evaluated individual workers' industrial injuries, and to properly utilize "the UR process when reviewing and resolving *any and all* requests for medical treatment." (*State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (2008) 44 Cal.4th 230, 236 (*State Comp.*) [emphasis in original].)

Waveform filed suit against EK Health, alleging that EK Health was "situated as a monopolistic 'gate keeper' to a significant and substantial market share of patients who are injured on the job. However, [EK Health] and its reviewers have the power to bar [Waveform] from servicing these patients and that is precisely what Defendants have done and continue to do." Waveform further alleged that EK Health and the Reviewers conspired to defame Waveform and consistently denied the H-Wave device for treatment of individual patients, with the result that treating physicians asked Waveform to remove H-Wave equipment from doctors' offices and physical therapy clinics. It also alleged that the defendants' conduct caused "H-Wave sales representatives [to be] banned from doctors' offices . . . [a]nd Plaintiffs [*sic*] have seen prescriptions drop-off dramatically from certain doctors following the personal threatening contacts from Defendants." Waveform alleged that the conduct of all of the defendants violated the Cartwright Act (Bus. & Prof. Code, §§ 16720 et seq.) and that the acts of EK Health and of a subset of the Reviewers constituted intentional interference with prospective economic advantage and trade libel.

3

EK Health and the Reviewers filed a special motion to strike the complaint under section 425.16 (anti-SLAPP motion) in October 2011. On January 26, 2012, the trial court denied the anti-SLAPP motion. The trial court ruled that defendants had met their initial burden under the anti-SLAPP statute because the conduct alleged "involves statements made in connection with an issue under consideration in a legally-authorized official proceeding (i.e., the [UR] process for State Fund, an employee's workers' compensation carrier) in connection with a public issue." However, the court denied the anti-SLAPP motion because Waveform had shown a probability of success at trial. No defendant appealed the court's January 26, 2012 denial of the anti-SLAPP motion.

By stipulation of the parties, in January 2012, Waveform filed a first amended complaint adding State Fund as a defendant. Waveform alleged that State Fund had implemented through EK Health a "blanket policy" to deny and reject physicians' prescriptions for utilization of the H-Wave device in treatment of patients' injures and that "[w]hile creating the appearance of reviewer independence, EK Health and the reviewers in fact complied with State Fund's policy that all H-Wave requests be denied." Waveform alleged, the policy "violates the independent medical decision-making that reviewers are required to engage in. . . ." It also alleged that the combination of the State Fund "blanket policy" and the collaboration in enforcing that policy by EK Health and the Reviewers in UR proceedings resulted in denial of "100% or nearly 100% of all UR requests for H-Wave," resulting in loss of sales and revenue to Waveform and constituting anti-competitive conduct proscribed by the Cartwright Act (Bus. & Prof. Code, §§ 16700 et seq.) and intentional interference with prospective economic advantage. The trade libel cause of action remained, but did not add State Fund as a defendant.

State Fund filed its own anti-SLAPP motion on March 8, 2013, seeking to dismiss both causes of action alleged against it. State Fund argued the first prong of the anti-SLAPP analysis was satisfied because the trial court had already concluded the causes of action were based on "statements made in connection with an issue under consideration in a legally authorized official proceeding (i.e., the [UR] for State Fund, an employees'

4

workers' compensation carrier). . . ." On the second prong, State Fund argued that Waveform could not prevail as State Fund's statements and conduct were protected under (1) the litigation privilege (Civ. Code, § 47, subd. (b)) and (2) the *Noerr-Pennington* doctrine.[2] State Fund also argued that Waveform's first cause of action failed to allege a combination in restraint of trade or any injury to competition, and the second cause of action was barred by the exclusive remedy status of the "California workers' compensation scheme."

For various reasons not directly pertinent to this appeal, the trial court (1) held a hearing on State Fund's anti-SLAPP motion; (2) issued an initial ruling granting State Fund's motion, (3) vacated its initial ruling, (4) confirmed that briefing on State Fund's anti-SLAPP motion was complete and (5) set a new hearing date on the motion, coinciding with the hearing date for plaintiff's motion for preliminary injunction and State Fund's demurrer.

On April 30, 2013, EK Health and the Reviewers attempted to join State Fund's anti-SLAPP motion. Their purported joinder consisted of two sentences, stating first that these parties "do and hereby do, join in [State Fund's] anti-SLAPP motion[]" and then that "Defendants hereby adopt all legal authority and argument contained in the Notice and Memorandum of Points and Authorities filed by Defendant (State Fund) in its Motion." Waveform opposed the attempted joinder.

The court held a second hearing on State Fund's anti-SLAPP motion on May 22, 2013 and issued its final ruling granting the motion on July 31, 2013. The trial court ruled that State Fund had established that its actions arose from "official proceedings" as its actions constituted "statements made in connection with an issue under consideration in a legally-authorized official proceeding (i.e. the UR [process] for [State Fund], [a] workers' compensation carrier)." As the trial court explained, ". . . [Waveform's] claim

---

[2]     Subject to certain exceptions, the *Noerr-Pennington* doctrine immunizes from anti-trust liability those who petition the government for redress. The name of this doctrine is derived from two United States Supreme Court decisions, *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc*. (1961) 365 U.S. 127 [5 L.Ed. 464] and *United Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626].)

that [State Fund] implemented a 'blanket denial' of H-Wave requests implicitly concedes that an administrative review process has been conducted. . . . The very nature of such a process constitutes official conduct and communications performed within a legally-mandated review process that is afforded protection under the anti-SLAPP statute."

The trial court also concluded that plaintiff had not shown a probability of prevailing against State Fund at trial for three reasons: (1) the statements attributed to State Fund are privileged under Civil Code section 47, subdivision (b); (2) Waveform's claims are barred by the *Noerr-Pennington* doctrine (see fn. 2, *ante*) which immunizes from anti-trust liability those who petition the government for redress; and (3) any otherwise actionable conduct by State Fund (threatening to remove from its network any physicians who continue to prescribe H-Wave treatments or refusing to comply with the allegedly blanket State Fund policy of denying H-Wave prescriptions) is within the exclusive jurisdiction of the workers' compensation system, citing *Charles J. Vacanti, M.D. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800. The trial court dismissed State Fund as a defendant.

With respect to EK Health and the Reviewers, the order simply stated, "These defendants are differently situated. The Court's conclusions herein are inapplicable to them. The joinders are denied." EK Health and the Reviewers appealed the court's order, and Waveform appealed the order granting State Fund's anti-SLAPP motion.

### III. THE APPEAL FILED BY DEFENDANTS EK HEALTH AND REVIEWERS

We dismiss the appeal filed by EK Health and the Reviewers (Defendants).[3] We agree with Waveform that EK Health and the Reviewers filed an untimely and substantively inadequate attempt to join in State Fund's anti-SLAPP motion. In light of the factual and procedural background leading to the trial court's July 31, 2013 order

---

[3] For ease of reference, and in this section only, we refer to EK Health and the Reviewers collectively as Defendants. Although State Fund is also a named defendant in the complaint, the term "Defendants" does not include State Fund.

granting State Fund's anti-SLAPP motion, and the absence of any discussion of the timeliness or the substance of the attempted joinder, we construe the order as denying joinder, and not as a denial of an anti-SLAPP motion.

The purported "joinder" filed by EK Health and the Reviewers consists of two sentences, the first in which the "moving" parties state that they "will and hereby do, join" State Fund's anti-SLAPP motion and the second in which they "hereby adopt all legal authority and argument contained in" State Fund's memorandum of points and authorities. In its challenge to the joinder, Waveform pointed out that the joinder was untimely and materially deficient in omitting any explanation of how State Fund's motion applied to EK and the Reviewers or sought any relief for EK and the Reviewers.

Section 425.16, subdivision (f), provides in pertinent part: "The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." Thus, a trial court may exercise its discretion to consider an anti-SLAPP motion filed after the 60-day deadline. (*Chitsazzadeh v. Kramer & Kaslow* (2011) 199 Cal.App.4th 676, 684.)

Waveform filed its First Amended Complaint on January 14, 2014, and State Fund filed its anti-SLAPP motion on March 8, 2013. Defendants did not file their joinder until April 30, 2013, more than 100 days after the first amended complaint, and 53 days after State Fund's motion. The joinder did not ask the court to exercise its discretion under section 425.16, subdivision (f), nor did it provide any explanation for the delay from the time State Fund had filed its motion. Defendants contend the trial court's order is an implicit exercise of the court's discretion and granted them leave to make a late filing. They point to the order's language, which stated, inter alia, "The joinders are denied," without its making any express statement regarding any "impropriety or lateness of filing [of the joinder]" in its July 31, 2013 Order on the anti-SLAPP motion. We disagree that the trial court's order should be read as impliedly granting late filing relief. Instead, on the facts of this case, it is far more likely that the denial was of the joinder of these defendants in State Fund's motion and that they have no right to appeal it.

7

Our conclusion is supported by the fact that the joinder was filed after both the initial arguments on State Fund's motion and the trial court issued its first (albeit erroneous and subsequently withdrawn) order on the merits of State Fund's motion. (Nor had Defendants filed any papers in connection with or appeared at the original argument on State Fund's anti-SLAPP motion on March 19, 2013.) On March 27, 2013, the trial court set a new hearing on State Fund's anti-SLAPP motion and stated that briefing "is closed and no additional briefs may be filed in connection with that Motion."

When Defendants filed their joinder, it was incumbent on them also to file a request for leave to join, file a proper joinder, and obtain relief from the trial court's March 27 order—or risk a ruling denying joinder. The record is devoid of any effort by these parties to remedy the deficiencies in their joinder; nor, when the motion was finally argued on May 22, 2013, did these parties, who were represented by counsel at that hearing, present any oral request for permission to join, or any argument or explanation of the bases for their joinder, or any request for affirmative relief as to them. To the contrary, the transcript of the May 22, 2013 argument shows that, while counsel for Defendants was present, he made no argument of any type, not even stating for the record that he was joining in the arguments made by counsel for State Fund.

In addition to being untimely, Defendants' purported joinder is so defective in form and substance as to preclude us from construing the denial as an appealable anti-SLAPP ruling. As Waveform points out, the joinder contains no explanation of how State Fund's motion applies to EK Health and the Reviewers; nor does it contain any request for relief as to these purportedly moving parties.

Although EK Health and the Reviewers seek to rely on *Barak v. The Quisenberry Law Firm* (2006) 135 Cal.App.4th 654 (*Barak*) and *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26 (*Commonwealth Energy*), these cases support Waveform's motion to dismiss. In each case, the party seeking to join in the motion there at issue included in its joinder a request for relief (*Barak, supra,* 135 Cal.App.4th at p. 661; *Commonwealth Energy, supra*, 110 Cal.App.4th at p. 31, fn. 3). Here, EK Health and the Reviewers did not make any such request. As they never

8

specified any relief which they sought, they cannot be "aggrieved parties." They may well have been aggrieved based on the denial of their anti-SLAPP motion in January of the same year, but they elected not to appeal that determination. Nor are they aggrieved now when they did not seek any affirmative relief in their deficient joinder. (See *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201.)

Finally, in support of the validity of their joinder these defendants argue that permitting full joinder is "consistent with the legislative purpose of ensuring the prompt resolution of lawsuits that impinge on a defendant's free speech rights, citing *Platypus Wear, Inc. v. Goldberg* (2008) 166 Cal.App.4th 772, 785." In so arguing, they omit any reference to the history of their own anti-SLAPP motion.

These circumstances compel the conclusion that permitting joinder, and thus giving these parties standing to appeal, does not advance this legislative purpose as the same claimed rights had been considered earlier in the same case as to these same parties and they had not sought review of the order denying their own anti-SLAPP motion.

Accordingly, these defendants lack standing to appeal the July 31, 2013 order on the motion filed by State Fund, and the motion to dismiss the appeals of these defendants from that order is granted.


## IV. ANTI-SLAPP CONTENTIONS

Cross-Appellant Waveform raises several contentions on its appeal from the trial court's order granting State Fund's anti-SLAPP motion (hereinafter, the appeal). We focus on its argument that State Fund has not met its burden to establish that the UR process is an official proceeding within the meaning of section 425.16, subdivision (e)(2) as the outcome of this discussion is dispositive.


a. *Anti-SLAPP principles*

"Section 425.16 provides, in pertinent part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in

9

connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) The purpose of the statute is "to provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 (*Rusheen*); § 425.16, subd. (a).) The provisions of section 425.16 must be "construed broadly" to effectuate the statute's purpose. (§ 425.16, subd. (a).)

"A special motion to strike under section 425.16 entails a two-step process. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).) First, the defendant must make a threshold showing that the challenged cause of action arises from protected activity. (*Rusheen, supra*, 37 Cal.4th at p. 1056.) If the defendant makes this showing, the burden shifts to the plaintiff to demonstrate a probability of prevailing on the merits of the claim. (*Ibid.*) The plaintiff must state and substantiate a legally sufficient claim: "'[p]ut another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]'" (*Ibid.*) For purposes of this inquiry, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant [citation]." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821; see § 425.16, subd. (b)(2).) However, "'the court does not weigh the evidence or make credibility determinations. [Citations.]'" (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 197.) In addition to considering the substantive merits of the plaintiff's claims, the trial court must also consider all available defenses to the claims, including constitutional defenses. (*Traditional Cat Assn., Inc. v. Gilbreath* (2004) 118 Cal.App.4th 392, 398.)

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier, supra*, 29 Cal.4th at p. 89.) "We review de novo whether the trial court should have granted [the defendant's] special motion to strike, conducting an independent review of the entire record. (*Soukup*

10

*v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 (*Soukup*).)" (*No Doubt v. Activision Publishing, Inc.* (2011) 192 Cal.App.4th 1018, 1025-1026.)

"In the anti-SLAPP context, 'the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity.'" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) The court looks to 'the gravamen or principal thrust' of the action." (*Id.* at pp. 477-478, 487, citing *Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 193.)

  b. *Whether the UR process is an "official proceeding authorized by law"*

The parties contest whether UR is an "official proceeding authorized by law" as that term is used in section 425.16, subdivision (e)(2).[4] The burden is on State Fund to establish that it is such a proceeding, as part of its "first prong" burden.

In support of its contention, State Fund argues that "official proceedings" include administrative agency actions involving review and investigation of grievances, and that the workers' compensation UR system, which involves resolution of claims for medical treatment, should be similarly viewed. For this argument, it relies on *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1048-1049 (*Braun*) [state investigative audits]; *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1009 [soliciting an SEC investigation]; and *Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192 (*Kibler*) [statutorily-required hospital peer review procedures]. State Fund places substantial weight on *Kibler*, in which our Supreme Court held that a hospital peer review proceeding was an official proceeding under section 425.16 because (i) it complied with procedures required by Business and Professions Code section 805, (ii) the hospital was required to report decisions to a licensing body, and (iii) the peer review

---

4      Section 425.16, subdivision (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law. . . ."

11

decision was subject to judicial review by administrative mandate. (*Kibler, supra,* 39 Cal.4th at p. 200.)[5] State Fund argues that UR has the same attributes.

Waveform argues that the UR process is not quasi-judicial or part of a comprehensive statutory licensing scheme which is subject to judicial review by administrative mandate. In addition to relying, as does State Fund, on *Kibler*, *supra*, 39 Cal.4th 192, Waveform also relies on *Century 21 Chamberlain & Associates v. Haberman* (2009) 173 Cal.App.4th 1 (*Century 21*) [real estate broker arbitration is not a judicial proceeding, but an alternative, and does not initiate proceedings reviewable by administrative mandate].[6] Finally, Waveform argues that UR is just a claims adjustment process, not more, and thus, it is not subject to scrutiny against the standard of section 425.16.

The trial court expressly held that State Fund's actions arose from official proceedings, citing two of the cases relied upon by State Fund,, *Kibler, supra,* 39 Cal.4th 192 and *Braun, supra*., 52 Cal.App.4th 1036. In explaining its determination, the trial court cited evidence supplied by State Fund that "substantia[tes] that the UR process is, essentially, a comprehensive administrative review procedure mandated by the Labor Code. . . . The very nature of such a process constitutes official conduct and communications performed within a legally-mandated review process that is afforded

---

[5]    In its brief on this appeal, State Fund also contends its motion below was based in addition on section 425.16, subdivision (e)(4) "which extends the protection of anti-SLAPP statute to any other conduct in furtherance of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." However, the only mention of this section below is that "[the first amended complaint arises out of protected activity] under section 425.16, subdivision (e)(2) and (4). . . ." There is no discussion of this basis, or a further correct citation to it, anywhere in State Fund's arguments, and we deem it abandoned.

[6]    Waveform apparently miscites *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, arguing that it holds that arbitration required by statute is not subject to the anti-SLAPP statute. This case actually holds that State Bar sponsored fee arbitrations may be subject to anti-SLAPP protection. (*Philipson & Simon & Gulsvig, supra*, 154 Cal.App.4th at p. 358; see *Century 21, supra*, 173 Cal.App.4th at p. 8, fn. 3.)

12

protection under the anti-SLAPP statute. The process is statutorily-based and regulated through a physician review process."

c. *Analysis of the parties' contentions regarding UR as an "official proceeding"*

We first consider Waveform's argument that UR is a "mere claims adjustment" rather than an "official proceeding" within the meaning of that phrase in the anti-SLAPP statute.

Section 425.16, subdivision (e)(2) requires that activity which may be protected by its terms, inter alia, must be in connection with an "official proceeding authorized by law." Waveform argues that the UR process is too far removed from any potential legal proceeding to constitute an official proceeding. In support of its contention, it focuses on the nature of UR and its status as a remote precursor to any form of litigation. Indeed, (1) the nature of the UR inquiry which focuses on whether prescribed treatment is appropriate medically; (2) the circumstance that it is conducted by a medical professional rather than an arbitrator or judge; and (3) the fact that any review results not in litigation but in a new review by another medical professional, together demonstrate in its view that the UR process is so focused on 'claims review by another name'—rather than preparation for litigation—that UR is not properly considered an official proceeding.

Waveform relies on cases such as *People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, to support its contention. There, the appellate court held that whether the submission of an insurance claim constituted protected pre-litigation activity under the anti-SLAPP statute depended on whether the claim is submitted for payment, or merely as a necessary precursor to litigation. It also held that in most cases in that process litigation would be a "mere possibility"—which is not sufficient to consider the insurance claims process formal pre-litigation conduct—and thus it is not an "official proceeding." (*Id*. at p. 827.)

State Fund's arguments focus on the injured worker's right to appeal. (See, e.g., *State Comp., supra*, 44 Cal.4th at p. 237 [only injured worker may appeal UR determination].) But State Fund's case citations do not compel the result it advocates.

13

For example, its reliance on a case holding that State Bar fee arbitrations are official proceedings (*Philipson & Simon v. Gulsvig, supra*, 154 Cal.App.4th at p. 358) only indicates that determinations of what constitutes an "official proceeding" are fact- and statute-specific. A critical distinction is that in fee arbitrations the very nature of the process—it is an *arbitration*, a traditional litigation substitute—distinguishes it, and led that court to determine it to be an official proceeding. By contrast, UR review is medical rather than legal and informal rather than formal. Fee arbitration has attributes which stand in stark contrast.

For this reason alone, the trial court erred in concluding that UR is an "official proceeding" within the meaning of that term in section 425.16, subdivision (e)(2).[7]

d. *Whether UR is "comprehensive administrative review" under Kibler*

The trial court also based its ruling on State Fund's claim that UR is a comprehensive administrative review procedure meeting the three-factor test of *Kibler, supra,* 39 Cal.4th 192. Other courts have applied the three factors set out in *Kibler* and reached disparate results. In *Braun, supra,* 52 Cal.App.4th 1036, the court held that an investigative audit conducted by the State Auditor was an official proceeding for purposes of section 425.16 even though it was closed to the public and had none of the procedural provisions common to either arbitration or litigation. The court reasoned that the audit was "an authorized, public proceeding" because it was "government-sponsored and provided for by statute." (*Braun, supra*, at p. 1049.) A similar result was reached in other cases, including *ComputerXpress, Inc. v. Jackson, supra,* 93 Cal.App.4th 993, which concerned internal investigations by the California Department of Corrections.

The issue is not free from disagreement, however. Thus, recently, in *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722 (*Talega*), the

---

[7]     The circumstances described in this opinion also compel the conclusion that the UR process is not "pre-litigation activity protected under the anti-SLAPP statute" The outcome of any review of the initial UR determination is a new UR review rather than any litigation.

14

Fourth District Court of Appeal determined that, notwithstanding the significant regulations governing operations of such entities set out in the Corporations Code and Civil Code, a homeowners association is not an organization which conducts "official proceedings authorized by law" within the meaning of that phrase in section 425.16, subdivision (e)(2).  In distinguishing the private association under consideration in *Talega* from the hospital peer review process at issue in *Kibler*, *supra*, 39 Cal.4th 192, that court of appeal focused on the circumstances in *Kibler*, that (1) the results of hospital peer review proceedings are required to be reported to the Medical Board of California and thus assist that public body in discharging its regulation and discipline of "errant healing arts practitioners" (*id.* at p. 200), while there is no such mandatory self-reporting for homeowners associations; and (2) a hospital peer review committee's decision is reviewable by administrative mandamus, while determinations of the homeowners associations are not.  (*Talega, supra*, 225 Cal.App.4th at p. 722.)  Among the cases which *Talega* discussed in its analysis of this issue are *Garretson v. Post* (2007) 156 Cal.App.4th 1508 (*Garretson*) and *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500.

In *Garretson*, *supra*, 156 Cal.App.4th at page 1508, the court determined that nonjudicial foreclosure proceedings are not subject to protection under the anti-SLAPP statute notwithstanding the "comprehensive statutory framework" governing such procedures and the availability of judicial recourse.  (*Talega, supra*, 225 Cal.App.4th at p. 460, citing *Garretson*, *supra*, at p. 1518.)  The *Talega* court concluded: "Nonetheless, the [*Garretson*] court concluded a nonjudicial foreclosure is fundamentally a "'private, contractual proceeding, rather than an official governmental proceeding or action.' [Citation omitted.]  The court distinguished *Kibler* on the basis that nonjudicial foreclosures "are not closely linked to any governmental, administrative, or judicial proceedings or regulation, such as the state licensing of physicians in *Kibler*."'"  (*Talega, supra*, 225 Cal.App.4th at pp. 731-732, citing *Garretson, supra,* 156 Cal.App.4th at p. 1521.)

15

In *Donovan*, *supra*, 204 Cal.App.4th 1500, the plaintiff sued the board of directors and members of a non-profit charitable organization for wrongful removal. The defendants contended that the board meeting at which Donovan had been removed was an official proceeding because the "board of directors and majority voting are authorized under the Corporations Code, and the issue whether to retain [plaintiff] was an issue of consideration before [the board of directors]." (*Id.* at p. 1508; *Talega, supra,* 225 Cal.App.4th at p. 732.) The court rejected that contention and distinguished *Kibler* on the basis that board decisions are not subject to review by administrative mandate and because, though meetings of the board of directors were authorized by statute, 'the actual procedures are left to the private organizations." (*Donovan, supra,* at p. 1508, *Talega, supra,* at p. 732.)

In the present case, there is an extensive body of statutes enacted by our Legislature and a large body of regulations adopted under the constitutionally created Workers' Compensation Appeals Board, lending some support to a holding that the first of the *Kibler* factors (compliance with comprehensive statutory scheme) is present. However, the second and third *Kibler* factors are either absent or problematic. The second *Kibler* factor (required reporting of outcomes to a state licensing body which has supervision over the affected licensees) is absent. The subject of the peer review process in *Kibler* is a physician who was being investigated to determine if his or her hospital privileges should be restricted, suspended or revoked. An adverse decision in that circumstance is reported to the state licensing body which may then discipline (including revoking) his or her license to practice medicine. There is no similar focus or consequence in the UR proceeding. The affected individual (the injured worker) is not a licensee, the focus of the hearing is entirely different and the result is either agreement or an appeal and a new and independent UR determination.

Nor is the third *Kibler* factor, review by administrative mandamus, present. Decisions concerning the appropriate medical treatment are finally resolved within the medical review process, the focus of which is assessing medical necessity. This process is not comparable to review by writ of mandamus. Thus, we conclude that neither the

16

second nor the third *Kibler* factors are present, and the trial court erred in granting State Fund's anti-SLAPP motion.

## V.  OTHER ISSUES

Because State Fund has failed to make the threshold showing that Waveform's lawsuit is subject to being dismissed  under section 425.16, it is unnecessary to discuss the second prong of anti-SLAPP analysis (to determine whether Waveform has established the probable validity of its causes of action for violation of the Cartwright Act and intentional interference with prospective economic advantage).  Nor is it appropriate to consider at this time the other affirmative defenses raised by State Fund or to consider other aspects of the defenses which State Fund asserts.  Also, Waveform's request for review of the trial court's order barring "limited discovery" is mooted by this decision.

## VI.  DISPOSITION

The judgment dismissing State Fund from Waveform's first amended complaint is reversed.  The trial court's grant of attorney's fees to State Fund (in an amount to be determined by later motion) is also reversed.  The appeal by EK Health and the Reviewers is dismissed.

The matter is remanded for further proceedings consistent with the views expressed herein.  Waveform shall recover its costs of appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


GOODMAN, J.[*]

We concur:



MOSK, Acting P.J.                          KRIEGLER, J.

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17