[No. G035694. Fourth Dist., Div. Three. Feb. 21, 2006.]

A.F. BROWN ELECTRICAL CONTRACTOR, INC., Plaintiff and Respondent, v.
RHINO ELECTRIC SUPPLY, INC., et al., Defendants and Appellants.

COUNSEL

Hollins • Schechter and Kenneth C. Jones for Defendants and Appellants.

Law Office of Amanda J. Potier, Amanda J. Potier and Karin L. Van Zee for Plaintiff and Respondent.

OPINION

**ARONSON, J.**—Defendants Rhino Electric Supply, Inc., and Tom Bentele appeal the trial court's denial of their special motion to strike brought under the anti-SLAPP statute[1] (Code Civ. Proc., § 425.16).[2] Defendants contend their filing of a stop notice[3] and other debt collection efforts constituted acts "in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue," (§ 425.16) and were absolutely privileged under the litigation privilege of Civil Code section 47, subdivision (b). Defendants also contend plaintiff A.F. Brown Electrical Contractor, Inc., (Brown) failed to demonstrate a probability of success because its evidence of damage is based solely on hearsay statements.

---

[1] SLAPP is the acronym for "strategic lawsuit against public participation," first coined by two University of Denver professors. (See Comment, *Strategic Lawsuits Against Public Participation: An Analysis of the Solutions* (1990–1991) 27 Cal. Western L.Rev. 399.)

[2] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[3] A stop notice is a procedural device available to a subcontractor who claims money is due from the general contractor on a public project. The stop notice requires the public agency to withhold the full amount of the subcontractor's claim from sums otherwise due the general contractor, unless the latter posts a bond for 125 percent of the claim. (Civ. Code, § 3179 et seq.)

Accordingly, the defendants contend the trial court erred by not striking Brown's lawsuit for libel, slander, and unfair business practices.

We reject defendants' argument their actions were absolutely privileged as a matter of law. Defendants failed to demonstrate that they made the challenged communications in connection with potential litigation that was given serious consideration and contemplated in good faith. Because defendants failed to establish their actions fell within the anti-SLAPP statute, we need not consider whether Brown demonstrated a probability of success. Accordingly, we conclude the trial court did not err in denying defendants' motion.

I

FACTUAL AND PROCEDURAL BACKGROUND

The Fountain Valley School District hired Brown to perform a variety of electrical services. In July 2003, Brown issued two purchase orders to the defendants, one in the amount of $77,000 for "wiremold" and one in the amount of $48,000 for other materials. The order called for defendants to store the material in trailers at three different school sites. The purchase orders were subject to the school district's approval.

Before receiving district approval for the purchase orders, one of defendants' former employees informed Brown that defendants had grossly inflated the purchase order prices as part of an alleged kickback scheme between defendants and one of Brown's employees. Brown cancelled the two purchase orders, reviewed the invoices for materials previously provided, and concluded defendants had overcharged the company by $3,000. After deducting this amount, Brown paid defendants the remaining balance it believed was due, $2,624.31. Defendants assert, however, Brown owed additional monies, and in March 2004, issued two stop notices to the district for amounts of $4,075.94 and $1,845.86, respectively. Defendants used a collection agency to pursue a claim against Brown's surety bond, and, according to Brown, defendants also filed a derogatory credit report against Brown with Dun & Bradstreet.

In September 2004, Brown filed an initial complaint and, in January 2005, filed a first amended complaint for libel, slander, and unfair business practices. Defendants then filed a special motion to strike under section 425.16, which the trial court denied. Defendants now appeal this ruling.

## II

### STANDARD OF REVIEW

An order denying an anti-SLAPP motion to strike is appealable. (§ 425.16, subd. (i).) We review a trial court's ruling on a motion to strike under section 425.16 de novo, "conducting an independent review of the entire record." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].)

## III

### DISCUSSION

A. *The Challenged Communications Were Not Statements or Writings Made Before a Judicial Proceeding, or Made in Connection with an Issue Under Consideration or Review by a Judicial Body*

 1. *Clauses (1) and (2) of Section 425.16, Subdivision (e) Are Coextensive with the Litigation Privilege*

Section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

■ To prevail on an anti-SLAPP motion, the movant must first make " 'a threshold showing the challenged cause of action' arises from an act in furtherance of the right of petition or free speech in connection with a public issue." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192 [25 Cal.Rptr.3d 298, 106 P.3d 958].) Once the movant meets this burden, the plaintiff must demonstrate " 'a probability of prevailing on the claim.' " (*Ibid.*) If plaintiff fails to do so, the cause of action must be stricken. (*Ibid.*)

■ The anti-SLAPP statute authorizes the court to strike a cause of action, but unlike motions to strike under section 436, it cannot be used to strike particular allegations within a cause of action. (*Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 308 [106 Cal.Rptr.2d 906].) Thus, to meet their burden, defendants need not prove that *all* of their acts alleged in a cause of action fall within the anti-SLAPP statute's protection. (*Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215] (*Mann*); *Scott v. Metabolife Internat., Inc.* (2004) 115

Cal.App.4th 404, 419 [9 Cal.Rptr.3d 242].) Nevertheless, where a cause of action is based on allegations that include protected and nonprotected activities, the cause of action is vulnerable to a special motion to strike under the anti-SLAPP statute only if the protected conduct forms a substantial part of the factual basis for the claim. (*Mann,* at p. 104.) If the defendant meets its burden on this score, the plaintiff need only demonstrate the cause of action has some merit. (*Id.,* at p. 106 ["a court need not engage in the time-consuming task of determining whether the plaintiff can substantiate all theories presented within a single cause of action"].)

Brown's causes of action for libel and unfair business practices are each based on three distinct acts by defendants: (1) issuing stop notices to the district; (2) informing the collection agency that Brown owed defendants money; and (3) making a derogatory credit report to Dun & Bradstreet. Brown's cause of action for slander relies only on the communication with the collection agency and the derogatory credit report.

Section 425.16, subdivision (e), instructs that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." If the defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e), the defendant is not required to independently demonstrate that the matter is a "public issue." (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842–843 [36 Cal.Rptr.3d 385] (*Navarro*).)

It is beyond dispute the filing of a complaint is an exercise of the constitutional right of petition and falls under section 425.16. (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929 [116 Cal.Rptr.2d 187] (*Kajima*).) Section 425.16 may also apply to conduct that relates to such litigation. (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 908 [120 Cal.Rptr.2d 576] (*Kashian*).) Courts have adopted a "fairly expansive view" of litigation-related conduct to which section 425.16 applies. (*Kashian,* at p. 908.) Moreover, "[c]lauses (1) and (2) of section 425.16, subdivision (e) . . . are coextensive with the litigation privilege of Civil Code section 47, subdivision (b)." (*Ruiz v. Harbor View*

*Community Assn.* (2005) 134 Cal.App.4th 1456, 1467, fn. 3 [37 Cal.Rptr.3d 133].) Thus, " '[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits of section 425.16.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*).)

In recognition of this principle, defendants' primary argument on appeal is that they made the challenged communications in anticipation of the filing of a collection action, and therefore their statements fell within the litigation privilege. They rely on the litigation privilege both to demonstrate their initial burden of showing that each cause of action falls within the anti-SLAPP statute, and to defeat any showing by Brown its causes of action have merit.

■ The litigation privilege shields any "publication or broadcast" made "[i]n any . . . judicial proceeding." (Civ. Code, § 47, subd. (b).) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. [Citation.] Put another way, application of the privilege does not depend on the publisher's 'motives, morals, ethics or intent.' [Citation.] Although originally applied only to defamation actions, the privilege has been extended to *any* communication, not just a publication, having 'some relation' to a judicial proceeding, and to *all* torts other than malicious prosecution. [Citations.] Moreover, '[t]he litigation privilege is not limited to the courtroom, but encompasses actions by administrative bodies and quasi-judicial proceedings. [Citation.] The privilege extends beyond statements made in the proceedings, and includes statements made to initiate official action. [Citation.]' " (*Kashian, supra,* 98 Cal.App.4th at p. 913.)

■ Under the " 'usual formulation,' " the litigation " 'privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]' [Citation.]" (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1058 [18 Cal.Rptr.3d 882].) The privilege extends to "any publication . . . that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked." (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 380–381 [295 P.2d 405] (*Albertson*).) Accordingly, courts have extended the privilege to the sending of a prelitigation demand letter (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 260–261 [68 Cal.Rptr.2d 305] (*Aronson*)); recording of a notice of lis pendens

(*Albertson, supra*, at p. 381); publishing of an assessment lien (*Wilton v. Mountain Wood Homeowners Assn., Inc.* (1993) 18 Cal.App.4th 565, 570 [22 Cal.Rptr.2d 471] (*Wilton*)); filing of a hospital lien (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798 [135 Cal.Rptr.2d 1, 69 P.3d 927]); and filing of a mechanic's lien (*Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1, 25 [105 Cal.Rptr. 414]).

Brown, however, argues the litigation privilege does not apply because (1) stop notices, unlike liens, are not subject to the litigation privilege, and (2) defendants never filed any lawsuit seeking to collect funds allegedly due Rhino; therefore, publication of the stop notices and communications to the collection agency were not made in a judicial proceeding.

### 2. *The Litigation Privilege Applies to Stop Notices*

In making the first argument, Brown attempts to distinguish between a mechanic's lien, which may be filed in a private work of improvement, and a stop notice, which may be filed on a public work project. True, as Brown points out, a stop notice does not create a lien on the work of improvement or the land on which it is situated, but instead requires the public agency to withhold from the general contractor money or bonds in an amount sufficient to satisfy the stop notice claims and the reasonable cost of any ensuing litigation. (Civ. Code, § 3186.) That distinction, however, is irrelevant for purposes of the litigation privilege.

"[T]he filing of a mechanic's lien is privileged because the claim of lien is authorized by law and related to an action to foreclose." (*Wilton, supra*, 18 Cal.App.4th at p. 569.) In a similar manner, stop notices are authorized by law and relate to an action for collection. Specifically, Civil Code section 3184 requires a claimant subcontractor to serve a stop notice within (a) 30 days after a notice of completion or cessation is filed, or (b) 90 days after actual completion or cessation if no notice is filed. (Civ. Code, § 3184.) The stop notice claimant may then file an action against the general contractor and the public entity to enforce the stop notice at any time after 10 days from the service of the stop notice until 90 days following expiration of the time in which a stop notice must be filed. (Civ. Code, § 3210.)

Although there are differences between the procedures for mechanic's liens and stop notices, they are both part of the California lien law scheme. As recognized in *Sunlight Electric Supply Company v. McKee* (1964) 226 Cal.App.2d 47, 50 [37 Cal.Rptr. 782]: "The mechanic's lien law including the stop-notice provisions is an integrated and harmonious scheme and applicable code sections must be construed together. It 'is remedial in character, and should be liberally construed in its entirety with a view to effect its objects and

to promote justice.' [Citations.] There would seem to be no cogent reason why all rules applicable to both should not apply with equal effect to both in the absence of specific legislative mandate to the contrary."

Brown has offered no convincing reason why stop notices should be treated differently from a mechanic's lien for purposes of the litigation privilege, and we can discern none.

### 3. The Litigation Privilege Protects Prelitigation Communications Only If Litigation Was Contemplated in Good Faith and Given Serious Consideration at the Time Defendant Made the Communication

█ Although the litigation privilege is absolute where applicable, the privilege protects only prelitigation communications having some relation to an anticipated lawsuit. (*Aronson, supra*, 58 Cal.App.4th at p. 262.) "In California, the courts have held a prelitigation statement is protected by the litigation privilege of section 47, subdivision (b) when the statement is made in connection with a proposed litigation that is 'contemplated in good faith and under serious consideration. [Citation.]' [Citations.]" (*Ibid.*) In other words, the prelitigation statements must " 'have some connection or logical relation to the action . . . .' " (*Id.* at p. 266.)

█ In support of their special motion to strike, defendants submitted declarations demonstrating the validity of Brown's debt, and that the stop notices and collection efforts were simply intended to collect the amount owed. Although these declarations are sufficient, standing alone, to demonstrate defendants' good faith belief in a legally viable claim, they utterly fail to demonstrate the acts were taken when litigation was under serious consideration. Indeed, the closest the declarations come to a discussion of contemplated litigation is the statement that Rhino informed Brown that if it failed to remit payment by a specified deadline, Rhino would issue the stop notices "and pursue all available legal remedies." This threat of potential legal action is insufficient, however, to demonstrate a lawsuit was under serious consideration.

Because defendants failed to establish that a lawsuit was under serious consideration, they failed to demonstrate the litigation privilege covered the challenged communications.

### B. Defendants Fail to Demonstrate the Disputed Communications Fall Under Any Other Provisions of the Anti-SLAPP Statute

Defendants also argue that their issuance of the stop notices constituted a "written . . . statement . . . made before . . . any other official proceeding

authorized by law . . . ." (§ 425.16, subd. (e)(1).) In other words, defendants contend they filed the stop notices not only in anticipation of court litigation, but also as part of a separate "official proceeding" before the school district. We disagree.

Not all writings submitted to a government agency for action fall within the ambit of the anti-SLAPP statute. For example, the submission of bids to a city to obtain a construction contract, and written requests for payment under such a contract fall outside the scope of the anti-SLAPP statute. (*Kajima, supra,* 95 Cal.App.4th at p. 932.) Similarly, communications made in connection with bids submitted in a government auction are not protected. (*Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 677 [10 Cal.Rptr.3d 696].) Each such an act is a "purely business type event or transaction and is not the type of protected activity contemplated under section 425.16, subdivision (e)." (*Ibid.*)

To find protection, the challenged communications must be made before "an official proceeding." For example, allegedly defamatory comments made in connection with ongoing proceedings held by the Department of Housing and Urban Development have been held to fall within the anti-SLAPP statute. (See *Briggs, supra,* 19 Cal.4th at p. 1115.) Similarly, a complaint to the Attorney General requesting an investigation also was protected, even though no investigation was then in progress. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830].)

In the present situation, however, there was no "official proceeding" in progress or requested by defendants when they submitted their stop notices. The stop notices required the school district to withhold part of the funds due the general contractor until a court intervened to determine to whom the payment would be made, or the time for filing such an action passed. (See Civ. Code, §§ 3201, 3210.) The stop notices did not request the district to commence any type of proceeding, or to make any type of administrative or adjudicatory decision. As discussed above, the defendants' filing of the stop notices is little different from a subcontractor who files a mechanic's lien on a private project. Such an act is protected under the anti-SLAPP statute only if done when a lawsuit related to that act was contemplated in good faith and given serious consideration. (*Aronson, supra,* 58 Cal.App.4th at p. 262.)

Finally, defendants contend the stop notices fall within the scope of "any other conduct in furtherance of the exercise of the . . . constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Again, we disagree.

Unlike conduct falling within clauses (1) and (2) of section 425.16, subdivision (e), conduct falling within clauses (3) and (4) requires an

independent showing that it was done " 'in connection with a public issue or an issue of public interest.' " (*Navarro, supra,* 134 Cal.App.4th at p. 839.) Defendants do not articulate how the stop notices at issue had any connection to a public issue or issue of public interest. Because the stop notices concerned only a private dispute between an electrical contractor and its subcontractor, section 425.16, subdivision (e)(4), does not apply.

Because defendants failed to meet their initial burden, we need not consider whether Brown demonstrated a probability of success. Accordingly, we conclude the trial court did not err in denying their special motion to strike.

## IV

### DISPOSITION

The order is affirmed.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied April 20, 2006, and on March 23, 2006, the opinion was modified to read as reprinted above. Appellants' petition for review by the Supreme Court was denied July 12, 2006, S142990.