Filed 8/28/13  Gross v. Judge CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| ARTHUR GROSS III, | |
| Plaintiff and Respondent, | G047549 |
| v. | (Super. Ct. No. 30-2011-00513096) |
| JAMES A. JUDGE et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, Frederick Paul Horn, Judge.  Affirmed.

The Judge Law Firm and James A. Judge for Defendants and Appellants.

No appearance for Plaintiff and Respondent.

James A. Judge, Edward Judge, and the Judge Law Firm appeal from an order denying their special motion to strike[1] an action filed against them by Arthur Gross III arising out of a debt collection matter. They contend the trial court erred by concluding the action did not arise out of protected activity, and because Gross made no showing he had a probability of prevailing, the court should not have granted the motion. We find no error and affirm the order.

FACTS AND PROCEDURE

Gross is a homeowner within the Westpark Maintenance District (Westpark), which is a mutual benefit nonprofit corporation. When Gross allegedly fell behind in his monthly assessment payments, Westpark commenced collections procedures.

Acting in propria persona, Gross filed the instant action against three sets of defendants: (1) Westpark and its board of directors (hereafter collectively referred to in the singular as Westpark); (2) Community Legal Advisers, Inc., and attorney Mark T. Guithues (hereafter collectively referred to in the singular as CLA); and (3) the appellants, including the Judge Law Firm, its owner, attorney James Judge, and his son, Edward Judge, who is not an attorney but employed by the Judge Law Firm (hereafter collectively referred to as the Judge Law Firm Defendants unless the context indicates otherwise).

The operative first amended complaint (the complaint) was premised on allegations all the defendants were attempting to collect more in assessments and fees than Gross owed. The complaint alleged James Judge was being sued "for his conduct and responsibility as a debt collector and not for any conduct inside any court action."

---

[1]     Code of Civil Procedure section 425.16 (hereafter section 425.16) authorizes a special motion to strike a Strategic Lawsuit Against Public Participation (SLAPP) action, and is referred to as the anti-SLAPP statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1.)

2

The complaint alleged Edward Judge (James Judge's son) was employed by the Judge Law Firm, and claimed to be an owner of the firm, even though he was not an attorney.

Gross alleged that due to health problems in 2008 and 2009, he fell behind on his monthly assessments payable to Westpark. In January 2010, when he retrieved "[six] cases of back mail that [were] on hold for him" at the post office, there was a notice from Westpark that he owed $2,200 in late dues. The demand letter, sent by the Judge Law Firm Defendants, included $580 in attorney fees and $245.32 in collection costs in the amount owed. Gross disputed the amounts, calculating the maximum he owed in assessments plus late charges was $640. Moreover, Gross alleged "[t]he [Judge Law Firm's] billing is false" because the demand letter was a form letter and "take[s] less than 15 minutes to fill out" and the retainer agreement between the Judge Law Firm and Westpark set rates at $200 an hour. Gross alleged Westpark denied him access to its books and records. On February 2, 2010, Gross sent Westpark a letter disputing the amount demanded, requesting a "meet and confer." He also tendered a check for $800 as full payment (which apparently was rejected).

The complaint alleged that on February 10, 2010, the Judge Law Firm Defendants filed a collection action against Gross on behalf of Westpark. Gross alleged the trial court sustained his demurrer to the collection action complaint with leave to amend, but at the hearing on the demurrer the trial court indicated it agreed with Gross's assertion Westpark could not "plead attorney fees, penalties, costs and interest and . . . could only collect from [Gross] the actual assessments[,] which [he] already had paid prior to the lawsuit being filed." But thereafter Westpark "through [its] attorneys, sent back [Gross's] checks un-cashed" and has continued to return his checks. Westpark later dismissed the collection action.

Gross alleged all the named defendants "are attempting to collect more money they can legally charge, including but not limited to falsified attorney fees." Moreover, he alleged Westpark had recently "threatened to foreclose on [Gross's] home

3

if [he] doesn't pay [the] falsified amount they demand.  Moreover, the defendants want [Gross] to pay amounts that the court already ruled against and amounts that are fraudulent."

Gross's complaint alleged Westpark violated various provisions of the Davis-Stirling Common Interest Development Act (Davis-Stirling Act; Civ. Code, § 1350 et seq.), pertaining to notices, access to records, and meeting and conferring with members.  It alleged all the defendants violated the unfair business practices law (Bus. & Prof. Code, § 17200 (UCL)), by "engag[ing] in false and fraudulent billing practices by falsely billing for services not rendered" and by "falsifying billing statements . . . falsifying attorney fees, fines and penalties, [and] threatening people's homes . . . ."  The complaint alleged Westpark and CLA (and not the Judge Law Firm Defendants), violated the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act; Civ. Code, § 1788 et seq.), by "false billing practices, charging for fees that they are all aware were denied by the court, harassing and threatening harm to [Gross] if he fails to pay the illegal amount[,]" and denying him access to books and records so he can determine the true amount he owes.

Based on the foregoing general allegations, Gross's complaint contained causes of action against the Judge Law Firm Defendants (and all the other defendants) for fraud and intentional misrepresentation (third cause of action), alleging they made misrepresentations to get Gross to pay more than "legally chargeable[;]" violation of the UCL (eighth cause of action) engaging in unfair business practices by falsifying billing statements; declaratory relief (tenth cause of action) seeking a judicial determination of the amounts due; and injunctive relief (eleventh cause of action) seeking to halt imposition of "false charges[.]"  The other causes of action alleged against Westpark and/or CLA included causes of action for breach of the CC&Rs; breach of fiduciary duty; fraudulent concealment; violations of the Davis-Stirling Act; and violation of the Rosenthal Act.

4

*Special Motion to Strike*

The Judge Law Firm Defendants filed a special motion to strike Gross's complaint, and sought $4,875 in additional attorney fees and costs incurred in preparing the special motion to strike. They also filed a demurrer to Gross's complaint on the ground it failed to state facts sufficient to constitute a cause of action.

In their special motion to strike, the Judge Law Firm Defendants contended Gross's complaint arose out of protected activity because the allegations all pertained to the Judge Law Firm's collection actions undertaken on behalf of its client, Westpark, while litigation was under consideration. James Judge declared the Judge Law Firm was retained by Westpark on December 14, 2009, to collect outstanding assessments due on Gross's property. On January 4, 2010, the Judge Law Firm sent Gross a letter demanding payment of unpaid assessments of $1,539.49 through February 5, 2010, attorney fees of $580, and collection costs of $245.32—for a total of $2,364.81. The demand letter warned Gross that if he did not pay, foreclosure proceedings might ensue and/or Westpark might choose to file suit and get a personal judgment against him. It stated if Gross did not either pay the amount owed or contact the Judge Law Firm to set up a payment plan within 30 days, legal action to collect the debt would be taken. The letter was signed by Edward Judge. Gross did not pay any portion of the amount demanded.

James Judge declared the $580 attorney fees charge encompassed time spent, "opening the file, obtaining title information, reviewing all of the recorded documents and other documents giving rise to the assessment of the claim as well as [generating] the actual letter itself. This is a standard charge based upon what I estimate was involved in terms of staff time and attorney time going up to the time of the letter. [¶] . . . All of the collection efforts I have described were made while litigation was being seriously considered and undertaken."

James Judge declared that on February 10, 2010, the Judge Law Firm filed the collection action against Gross. On June 21, 2010, the Judge Law Firm filed a

5

dismissal of the collection action *without prejudice* not "because of anything having to do with [Gross] and his delinquency . . . [but because] there were other disputes between [Gross] and [Westpark] and it was decided they best be handled together."

Gross filed written opposition to the special motion to strike, but it was not supported by any declarations or evidence. Gross argued he was not suing the Judge Law Firm Defendants because of their litigation actions, but rather over their debt collection practices.

*Ruling*

In its tentative ruling on the special motion to strike, the trial court stated: "[The Judge Law Firm Defendants] contend that the action is based on their representation of [Westpark], specifically their sending of the demand letter and the filing of the complaint in the underlying [collection] action. (Exhibits B and C to the moving papers.) [¶] While the [complaint] is against Westpark, it is not clear that the claims against [the Judge Law Firm Defendants] are based on their representation of Westpark. [¶] The [complaint] barely mentions [the Judge Law Firm Defendants]. Paragraph 5 simply alleges that the [Judge Law Firm] is a legal corporation . . . . Paragraph 6 alleges . . . Edward Judge . . . claims to be an owner of the law [firm] and paragraphs 24 and 25 repeats [*sic*] that he is not an attorney, notwithstanding a statement he made [to the contrary]. Paragraph 7 alleges . . . James A. Judge is an attorney who works primarily as a debt collector. [¶] Thus, [the Judge Law Firm Defendants] have failed to show that the action arises from protected activity and the burden never shifts to [Gross]." Following oral argument, the trial court issued its order denying the special motion to strike but sustaining the Judge Law Firm Defendants' demurrer with leave to amend.[2]

---

[2]    At the same time, the trial court also denied a special motion to strike filed by CLA and one of Westpark's board members, and sustained demurrers filed by CLA and Westpark with leave to amend.

6

DISCUSSION

A.  *General Principles*

Section 425.16, subdivision (b)(1), states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  Section 425.16 is to be "construed broadly."

Consideration of a section 425.16 special motion to strike anticipates a two-step process.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.  The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim."  (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).)  We review a trial court's ruling on a special motion to strike de novo.  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 675.)

B.  *Arising Out of Prong*

The Judge Law Firm Defendants contend the trial court erred by concluding they did not satisfy the "arising out of" prong.  We disagree.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.  [Citation.] . . . [T]he critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the

7

defendant's right of petition or free speech.  [Citations.]  'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .'  [Citations.]"  (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).)

As used in section 425.16, an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or in any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."  (§ 425.16, subd. (e).)  The Judge Law Firm Defendants rely on the first two categories, i.e., they contend Gross's complaint arises out of the exercise of their petitioning activity.[3]  These first two clauses of the anti-SLAPP statute "[a]re [c]oextensive with the [l]itigation [p]rivilege."  (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124 (*A.F. Brown*), italics omitted.)

In determining whether a defendant has met its first prong burden, the trial court "shall consider the pleadings, and supporting and opposing affidavits stating the

---

[3]  "When the defendant's alleged acts fall under the first two prongs of section 425.16, subdivision (e) (speech or petitioning before a legislative, executive, judicial, or other official proceeding, or statements made in connection with an issue under review or consideration by an official body), the defendant is not required to independently demonstrate that the matter is a 'public issue' within the statute's meaning. [Citation.]"  (*Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834, 842-843.)

8

facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *City of Cotati, supra,* 29 Cal.4th at p. 79; *Equilon Enterprises, supra,* 29 Cal.4th at p. 67.)[4] Although in meeting its burden "[d]efendant need only make a prima facie showing that plaintiff's complaint 'arises from' defendant's constitutionally protected free speech or petitioning activity[,]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 7:991, pp. 7(II)-51 to 52; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458), we agree with the trial court the Judge Law Firm Defendants did not make that showing here.

The Judge Law Firm Defendants argue there are only two possible acts alleged in Gross's complaint pertaining to them: (1) they sent Gross a collection demand letter (in common parlance called a "dunning letter"); and (2) they subsequently filed a collections lawsuit. The Judge Law Firm Defendants argue both acts are on their face protected petitioning activity, and thus, the "arising out of" prong was satisfied.

We have no quibble with the latter part of the Judge Law Firm Defendants' assertion—filing and dismissing the collection lawsuit is clearly protected petitioning activity. (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087-1088.) But with regard to the former part of the Judge Law Firm Defendants' argument, that sending the dunning letter (or other routine debt collection activity) is necessarily protected petitioning activity, we note numerous cases (none of which have been mentioned by the Judge Law Firm Defendants in their appellate brief) have concluded the contrary. For example, in *A.F. Brown, supra,* 137 Cal.App.4th 1118, this court held defendant's routine debt collection practices were not protected activities, where there was no evidence litigation was under serious consideration, and thus, the special motion to strike a complaint arising

---

[4] The Judge Law Firm Defendants argue the trial court erroneously considered only the allegations of the complaint in the first prong inquiry and disregarded the declarations. We see nothing in the record indicating the trial court misunderstood the law or disregarded the declarations, and in view of our de novo standard of review, we need not consider this point further.

from defendant/supplier's filing a stop notice and its other collection efforts against plaintiff/contractor was properly denied. (*Id.* at pp. 1128-1130.) Numerous federal cases have held in consumer's actions against debt collectors involving allegations of violations of California's Rosenthal Act and the federal Fair Debt Collection Practices Act, 15 U.S.C. sections 1692 et seq. ("FDCPA"), sending a dunning letter was not petitioning activity protected by the litigation privilege (Civ. Code, § 47), or subject to a special motion to strike. (See *Hutton v. Law Offices of Collins & Lamore* (S.D.Cal. 2009) 668 F.Supp.2d 1251, 1259 [dunning letter not protected activity for anti-SLAPP statute purposes]; *Welker v. Law Office of Horwitz* (S.D.Cal. 2009) 626 F.Supp.2d 1068, 1072 (*Welker*) [sending dunning letters not protected for anti-SLAPP statute purposes]; *Yates v. Allied Int'l Credit Corp.* (S.D.Cal. 2008) 578 F.Supp.2d 1251, 1255 [litigation privilege does not apply to claim brought under Rosenthal Act]; *Rouse v. Law Offices of Rory Clark* (S.D.Cal. 2006) 465 F.Supp.2d 1031, 1038 [debt collection activity not protected for anti-SLAPP statute purposes]; see also *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324, 337 [litigation privilege does not apply to claims of Rosenthal Act violations].)

In any event, we do not need to decide if sending the dunning letter itself was protected activity.[5] As the trial court observed, the allegations concerning the

---

[5] We note in this regard the filing of the collection lawsuit after the letter was sent would not convert the dunning letter into a privileged communication. "California courts rightly have rejected the notion 'that a lawsuit is adequately shown to be one "arising from" an act in furtherance of the rights of petition or free speech as long as suit was brought after the defendant engaged in such an act . . . .' [Citation.]" (*City of Cotati, supra,* 29 Cal.4th at p. 77.) A challenged communication is deemed to have been made "in connection with" a lawsuit only if the suit was "under serious consideration" at the time the communication was made. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1128 [even the "threat of potential legal action [in a challenged communication] is insufficient . . . to demonstrate a lawsuit was under serious consideration"].) There must be evidence litigation was under serious consideration, and we do not believe James Judge's self-serving conclusory declaration that "[a]ll of the collection efforts . . . were made while litigation was being seriously considered . . ." suffices. (See

Judge Law Firm Defendants are scant, but it appears the core conduct underlying the complaint is not filing the collection lawsuit or sending the dunning letter, but rather the billing practices by which the Judge Law Firm Defendants calculated the amount of attorney fees and costs that attached to the debt. Although James Judge submitted his declaration explaining the fees and costs were reasonable, that does not make the alleged conduct underlying the action protected. Because the Judge Law Firm Defendants have not demonstrated the acts on which the complaint is based are protected for purposes of the anti-SLAPP statute, we need not consider whether Gross demonstrated a probability of prevailing, and we affirm the order denying the special motion to strike. (*A.F. Brown, supra,* 137 Cal.App.4th at p. 1130.)

DISPOSITION

The order is affirmed. Because no appearance has been made by Respondent, no costs are awarded.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.

---

*Welker*, *supra,* 626 F.Supp.2d at p. 1073 [defendant's bald assertion dunning letter was sent "'in the course of litigation,'" not sufficient].)

11