Filed 7/29/21  Doe v. Lane Fertility Institute etc. CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JANE DOE,<br><br>    Plaintiff and Respondent,<br>v.<br>LANE FERTILITY INSTITUTE FOR EDUCATION AND RESEARCH, INC., et al.,<br><br>    Defendants and Appellants. | A162094<br><br>(Marin County<br>Super. Ct. No. CIV 2002299) |

Defendants Lane Fertility Institute for Education and Research, Inc. and Danielle Lane, M.D., Inc., a Professional Corporation, appeal from the trial court's order denying their special motion to strike the first amended complaint of plaintiff Jane Doe, pursuant to the provisions of California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc, § 425.16).[1]  Defendants contend the court erred in denying their special motion to strike because (1) the entirety of plaintiff's complaint is based on defendants' protected activity, and (2) plaintiff did not show a probability of prevailing on the merits.  We shall affirm the trial court's order.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

# BACKGROUND

Defendants' business is an alternative reproductive technology (ART) program pursuant to the federal Fertility Clinic Success Rate and Certification Act of 1992 (42 U.S.C. § 263a, et seq.). Defendants are required to submit certain data annually to the Department of Health and Human Services, through the Centers for Disease Control (CDC) in order to keep their certification. (See 42 U.S.C. § 263a, subd. (d)(1)(D).) The data defendants must report includes patient demographics, patient obstetrical and medical history, parental infertility diagnosis, clinical parameters of the ART procedure, and information about resulting pregnancies and births. They report this information to the Society of Assisted Reproductive Technologies (SART), which then transmits the information to the National ART Surveillance System, which ultimately delivers it to the CDC. (See 42 U.S.C. § 263a-1.) The CDC annually publishes the reported pregnancy success rates reported by ART programs. (42 U.S.C. § 263a-5.)

In September 2018, plaintiff contacted defendants to engage them in the provision of fertility-related medical services. At that time, defendants provided plaintiff with a written privacy policy, which stated that defendants would contact her only through the means she had specifically designated in writing. Plaintiff designated a private email address as her preferred method of contact, although she also communicated with defendants through a personal work email address.

On November 14, 2019, instead of using plaintiff's designated email address or her personal work email address, defendants sent an email containing personal and sensitive medical information to a general work group email address, g_____@google.com, which goes to plaintiff's entire work

team of nine people at Google and which is monitored by Google's security, privacy, and practices teams. The email stated:

"Hello [plaintiff],

"I had emailed you a few weeks ago regarding SART. On behalf of Lane Fertility Institute in regard to your embryo transfer on 12/6/2018 [*sic*]. I am in the process of reporting data on the success rate of our clinic to the national database, called SART. SART is an organization that reports data regarding IVF and assisted reproductive technology so that it is readily available to patients and clinicians.

"Please send me the following information, if you would be so kind: the outcome of the pregnancy (live birth/stillbirth/miscarriage), what method of delivery occurred (vaginal or cesarean), date of birth (or miscarriage), number of fetuses born, gender, and weight.[2]

"Thanks again for choosing Lane Fertility Institute."

Plaintiff had not informed any of the recipients of the email about the procedures defendants had performed. Since defendants' disclosure of her personal medical information in the work group email, plaintiff suffered anxiety, mental anguish, and stress about the revelation, and had not returned to her workplace.

On July 7, 2020, plaintiff filed her original complaint in this matter, asserting five causes of action, including violation of the Consumer Legal Remedies Act (Civ. Code, § 1750 et seq.); violation of the Confidentiality of

---

[2] Defendants sent this email to the general work group email address at Google after receiving an automated response to a previous similar message they had sent to plaintiff's personal work email address. The automated response from plaintiff's personal work email had stated in the subject line: "Out of Office: Maternity Leave." The body of the email stated: "Thank you for your email! I'm on maternity leave. For immediate assistance, please contact g_____@google.com."

3

Medical Information Act (Civ. Code, § 56 et seq.); violation of the constitutional right to privacy (Cal. Const., art. I, § 1); violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.); and negligence (negligence per se).

On October 14, 2020, plaintiff filed the operative first amended complaint, adding a cause of action for public disclosure of private fact.

On November 13, 2020, defendants filed a special motion to strike, pursuant to section 425.16.

On January 22, 2021, the trial court denied the motion to strike.

On February 17, 2021, defendants filed a notice of appeal.

## DISCUSSION

### I. *Anti-SLAPP Law and Standard of Review*

Subdivision (b)(1) of section 425.16 provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." As relevant here, subdivision (e) of section 425.16 provides: "As used in this section, 'act in furtherance of a person's right to petition or free speech under the United States of California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

4

"A two-step process is used for determining whether an action is a SLAPP. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity, that is, by demonstrating that the facts underlying the plaintiff's complaint fits one of the categories spelled out in section 425.16, subdivision (e). If the court finds that such a showing has been made, it must then determine the second step, whether the plaintiff has demonstrated a probability of prevailing on the claim. [Citation.]

'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPP's] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' [Citation.]

"Finally, and as subdivision (a) of section 425.16 expressly mandates, the section 'shall be construed broadly.' " (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463; see also *Kibler v. Northern Inyo County Local Hospital District* (2006) 39 Cal.4th 192, 197; *Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation, Inc.* (2019) 32 Cal.App.5th 458, 466.)

We review de novo a trial court's ruling granting or denying an anti-SLAPP motion. (*Hecimovich v. Encinal School Parent Teacher Organization*, *supra*, 191 Cal.App.4th at p. 464.)

5

Here, because the trial court found that defendants had failed to carry their initial burden, we are concerned solely with the first step of the analysis discussed in section 425.16. (See § 426.16, subds. (b)(1), (e)(1), (e)(2); *Wilson v. Cable News Network* (2019) 7 Cal.5th 871, 884.)

## II. *Legal Analysis*

The trial court found that defendants had "not shown that there was any current or anticipated 'official proceeding' triggering the application of [section] 425.16 [subdivision] (e)(1) or (2)." The court explained that to fall within the ambit of section 425.16, subdivision (e)(1), "the communication must be made in or 'before' the official proceeding. To fall within subsection (e)(2), the communication must generally concern an issue under review or determine a disputed matter. [Citations.] [¶] Defendants do not identify any current or anticipated official proceeding or investigation to which the November 14th email is connected in any way. Rather, the email appears to have been sent to collect information for the routine reporting of information to the Center for Disease Control through SART. The fact that defendants are engaging in activity to comply with the law does not transform their conduct into an official proceeding required [*sic*] by law. (*Olaes v. Nationwide Mutual Ins. Co.* (2006) 135 Cal.App.4th 1501, 1508–1509.)" We agree with the trial court that defendants have failed to demonstrate that their email to plaintiff constituted protected activity under section 425.16, subdivision (e)(1) or (e)(2).

"[P]lainly read," section 425.16—including subdivisions (e)(1) and (e)(2)—"encompasses any cause of action against a person arising from any statement or writing made in, or in connection with an issue under consideration or review by, an official proceeding or body." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1113.) "Not all

writings submitted to a government agency for action fall within the ambit of the anti-SLAPP statute." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1129.)

First, with respect to subdivision (e)(1) of section 425.16, the fact that defendants were attempting to obtain information from plaintiff in preparation for their annual reporting of information to the CDC does not transform their conduct in emailing plaintiff's personal medical information to her work group into a statement made in connection with an anticipated or existing "official proceeding authorized by law." (§ 426.16, subd. (e)(1); cf. *Olaes v. Nationwide Mutual Insurance Co.*, *supra*, 135 Cal.App.4th at p. 1508 [defendant's duty under section 12940 of the Government Code to take all reasonable steps necessary to prevent harassment in its workplace did "not automatically transform a private employer into an entity conducting 'official' proceedings" when it investigated sexual harassment complaints against plaintiff]; *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 677 ["The ministerial event of a sheriff's sale or auction simply does not concern an issue under review or determine some disputed matter as contemplated under the anti-SLAPP law"].) Instead, as the trial court found, defendants engaged in conduct related to the routine statutory reporting requirement applicable to all fertility clinics, which the CDC, as part of its ministerial duties, publishes.

Second, "[s]ection 425.16, subdivision (e)(2) protects only those 'written or oral statement[s] or writing[s] made in connection with an issue *under consideration or review*.' (Italics added.) The subdivision thus appears to contemplate an ongoing—or, at the very least, immediately pending—official proceeding. Conversely, if an issue is not presently 'under consideration or review' by such authorized bodies, then no expression—even if related to that

7

issue—could be 'made in connection with an issue under consideration or review.' (§ 425.16, subd. (e)(2).)" (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 627 (*Rand*); see also *Maranatha Corrections, LLC v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1075, 1085 ["As used in section 425.16[, subdivision] (e)(2), a matter is 'under consideration' if it 'is one kept "before the mind," given "attentive thought, reflection, meditation" [and a] matter under review is one subject to "an inspection, examination" ' "].)

Here, the statements in defendants' email were not made "in connection with an issue under consideration or review" by the Department of Health and Human Services or the CDC. (§ 425.16, subd. (e)(2).) Again, the email in question contained a request for information that defendants collected for their annual reporting of data to the federal government, as is required of all ART programs. (See 42 U.S.C. § 263a-1.) That the reporting is required for defendants' annual renewal of certification (42 U.S.C. § 263a(d)(1)(D)) and that failure to comply with the reporting requirements could possibly lead to future action by the CDC (42 U.S.C. § 263a-4) does not transform the email sent to plaintiff's work group into a writing made in connection with an issue presently under consideration or review by a governmental entity. (§ 425.16, subd. (e)(2); see *Rand*, *supra,* 6 Cal.5th at p. 627 [" '[u]nder consideration or review' does not mean any issue a [governmental] body may conceivably decide to take up months or years in the future"]; compare *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1048 [newspaper reporting on state auditor's investigative audit constituted statements made on issues under consideration or review in an official proceeding].)

Defendants discuss numerous cases in which appellate courts found that a defendant's conduct constituted protected activity under subdivision (e)(1) and/or (e)(2), all of which are distinguishable from the present case. (See, e.g., *Kibler v. Northern Inyo County Local Hospital District*, *supra*, 39 Cal.4th at pp. 196–197 [hospital's peer review proceedings qualified as an official proceeding because procedure was required under Business and Professions Code and because a hospital's decision resulting from such proceedings was subject to judicial review by administrative mandate]; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 941–945 [in defamation action, defendant's reporting of information to police, nurse, and employer's manager was protected activity because it was related to an investigation or other official proceeding and/or statements prior to litigation]; *Maranatha Corrections, LLC v. Department of Corrections and Rehabilitation*, *supra*, 158 Cal.App.4th at pp. 1080–1082, 1085 [where a private firm sued an executive branch department based on alleged defamatory statements in publicized letter terminating firm's contract following an ongoing dispute between parties about firm's right to retain revenue from inmate telephone calls at California correctional facilities, statements were protected under section 425.16, subdivision (e)(2) because those statements related to issues under consideration by a governmental body, i.e., by that executive branch department]; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1396 [state university employee's lawsuit against his manager for denying his administrative grievances related to alleged sexual harassment was based on protected activity where manager had reviewed plaintiff's grievances pursuant to personnel policies of Regents of University of California, which is a constitutional entity with quasi-judicial powers]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [defendants' pre-

9

litigation communications to other private citizens preparatory to filing a complaint to Attorney General seeking an investigation was protected speech "made in connection with an official proceeding authorized by law"]; *Mindys Cosmetics, Inc. v. Dakar* (9th Cir. 2010) 611 F.3d 590, 596 [because defendant's "filing of a trademark application [was] a formal communication to the [United States Patent and Trademark Office] seeking official action in a process governed by statute . . . , the application [was] protected by the anti-SLAPP statute as a 'writing made before . . . [an] executive [or] . . . other official proceeding authorized by law' " under subd. (e)(1) of section 425.16].)

In all of the cited cases, the protected statements were made in anticipation of, or during an official proceeding or were related to matters actively under consideration by a governmental body.  (See § 425.16, subd. (e)(1)-(2).)  Here, on the other hand, defendants were merely attempting to gather information for their annual report to the CDC regarding their ART program when they sent the email to plaintiff's work group.  The statements in the email were not protected speech related to any official proceeding, either anticipated or in progress, for purposes of section 425.16, subdivision (e)(1).  (See *A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc., supra*, 137 Cal.App.4th at p. 1129.)  Nor was there any issue "presently 'under consideration or review' " by a governmental body that related to the statements in the email, for purposes of section 425.16, subdivision (e)(2).  (*Rand*, *supra*, 6 Cal.5th at p. 627.)

In short, defendants have not satisfied their initial burden of demonstrating that plaintiff's lawsuit was brought primarily to chill their "valid exercise of the constitutional rights of freedom of speech and petition

for the redress of grievances." (§ 425.16, subd. (a).) The trial court's order denying defendants' anti-SLAPP motion must therefore be affirmed.[3]

## DISPOSITION

The order denying defendants' special motion to strike plaintiff's first amended complaint is affirmed. Costs on appeal are awarded to plaintiff.

---

[3] Having found that the court properly denied defendants' anti-SLAPP motion on the grounds discussed in this opinion, we need not address the court's second basis for denying the motion: that plaintiff's lawsuit arose from the harm caused by defendants' allegedly unlawful disclosure of plaintiff's private medical information to her work colleagues, rather than from any alleged impropriety in the contents of the email. (See, e.g., *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 ["the statutory phrase 'cause of action . . . arising from'" in subd. (b)(1) of § 426.16 "means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech"].)

_____
KLINE, P.J.


WE CONCUR:


_____
RICHMAN, J.


_____
STEWART, J.


*Doe v. Lane Fertility Institute For Education and Research, Inc., et al.*
(A162094)